UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MICHELLE HINDIN<br>104 Barringer Court<br>West Orange, NJ 07052<br><br>    *Plaintiff*,<br><br>  v.<br><br>THE POPULATION COUNCIL, INC.<br>One Dag Hammarskjold Plaza<br>New York, NY 10017<br><br>    *Defendant*. | CIVIL ACTION<br><br>CASE NO.:<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Plaintiff, Michelle Hindin (hereinafter "Plaintiff"), hereby complains as follows against Defendant and avers as follows:

### I. Introduction

1. Plaintiff initiates the instant action to redress violations by The Population Council, Inc. (hereinafter "Defendant") of Title VII of the Civil Rights Act of 1964 ("Title VII" – 42 U.S.C. §§ 2000d *et. seq*.), 29 U.S.C. § 206 and 29 U.S.C. § 215(a)(3) (the "Equal Pay Act"), Section 1981 of the Civil Rights Act of 1866 ("Section 1981" – 42 U.S.C. § 1981), the New York State Human Rights Law ("NYSHRL" - N.Y. Exec. Law §290 *et seq*.) and the New York City Human Rights Law, N.Y.C. Admin. Code ("NYCHRL") for subjecting her to gender discrimination; for denying her a promotion and terminating her on the basis of her gender and/or due to her complaints of gender and race discrimination.

## II.     Jurisdiction and Venue

2. This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims, because this civil action arises under laws of the United States. This Court may also assert supplemental jurisdiction over Plaintiff's state and city law claims as they arise out of the same facts as her federal law claims.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district and Defendant is deemed to reside where it is subject to personal jurisdiction, rendering Defendant a citizen of the Southern District of New York.

5. Plaintiff filed a Charge of discrimination and retaliation with the N.Y. Division of Human Rights which was also dual-filed with the Equal Employment Opportunity Commission ("EEOC").  Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing and dual-filing her Charge and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## III.     Parties

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a an international, nonprofit, non-governmental organization which conducts research in biomedicine, social science and public health, and helps build research capacities in developing countries.

9. At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV. Factual Background

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff is a female.

12. Plaintiff was hired by Defendant on or about September 6, 2017. Specifically, Plaintiff led Defendant's Reproductive Health program, as she was widely respected by her colleagues and consistently praised for her work performance, including in annual performance reviews.

13. Through the course of 2020 and 2021, Plaintiff engaged in repeated examples of protected activity, including in writing, in which she made complaints of discrimination by reason of Defendant's unequal pay.

14. Specifically, Plaintiff complained that females and people of color were being paid less than males and Caucasians, on account of their gender and/or race.

15. Plaintiff's complaints were largely ignored and not investigated and/or addressed meaningfully.

16. As such, on or about September 29, 2020, Plaintiff sent an email to Defendant's executive team, including but not limited to, Julia Bunting, President; Ann Blanc, then Vice

President for Social and Behavioral Science Research ("VP of SBSR"); Defendant's legal counsel; and Aaron Feo, Director of Human Resources (among others).

17. In that email, Plaintiff raised specific complaints of pay disparities based upon gender and race.

18. *That same day,* Blanc hit "reply" all to Plaintiff's email and copied Plaintiff in error. Obviously without performing any investigation, Blanc referred to Plaintiff's protected activity:

> "Foolish. I can't quite believe that Michelle [Plaintiff] has endorsed and championed this message. I think she needs to be told that she has violated her mandate as a senior Council manager to represent all staff, to make things better and more equitable. I am willing to have that conversation with her, although I would welcome some backup. Please let me know how you would like to proceed. I am sorry that I didn't see this coming."

19. The next day, Bunting called Plaintiff and stated that that she disagreed with Blanc's statements and assured Plaintiff that she would take efforts to remedy the salary scales.

20. In the ensuing months, President Bunting engaged Plaintiff in conversations regarding changing the "program structure to better reflect diversity, equity, and inclusion," including regarding pay.

21. However, there was no indication that any substantive steps were taken to address the issues outlined in Plaintiff's September 29, 2020 correspondence, and Plaintiff's complaints of pay disparities went largely ignored.

22. Following Plaintiff's complaints of pay disparities, she applied for the VP of SBSR position, as part of an internal search which was announced by President Bunting on December 17, 2020.

23. On or about March 5, 2021, Bunting and Feo informed Plaintiff that she was not selected for the VP of SBSR position and a less experienced and less qualified male, who had never complained of Defendant's pay disparities, was selected .

24. In the following months, Plaintiff continued to make complaints to Defendant about discrimination regarding its pay practices. However, there was never a discussion or any indication that Plaintiff's job was at risk or that any form of purported "lay-off" was imminent or even possible.

25. Unexpectedly, on August 5, 2021, Plaintiff was blindsided with a baseless termination wherein Defendant alleged that Plaintiff was supposedly "laid off."

26. Defendant's alleged lay-off was entirely pretextual, and Plaintiff was selected to be laid off over other individuals who had not complained of any form of pay discrimination.

27. In sum, Plaintiff's complaints of pay disparities at Defendant were largely ignored; no investigation was conducted; and she was passed over for a promotion; and was then pretextually terminated.

28. Plaintiff believes and therefore avers that she was denied a promotion and ultimately terminated, due to her gender and/or her complaints about gender and/or race discrimination.

## Count I
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### (Gender Discrimination and Retaliation)

29. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

30. Plaintiff uncovered pay disparities within Defendant's workforce based upon gender, such that she was forced to escalate her concerns to Defendant's management in advance of her termination.

31. Upon information and belief, Defendant's management did not properly investigate or resolve Plaintiff's concerns of gender discrimination and the unlawful treatment continued.

32. Shortly after complaining to Defendant's management of gender discrimination, she was denied a promotion and terminated from her employment for completely pretextual reasons.

33. Plaintiff believes and therefore avers that her gender was a motivating or determinative factor in Defendant's decision to deny Plaintiff her promotion and terminate her employment.

34. Plaintiff also believes and therefore avers that Defendant denied Plaintiff her promotion and terminated her employment in retaliation for complaining of gender discrimination.

35. These actions as aforesaid constitute unlawful discrimination and retaliation, under Title VII.

**Count II**
**Violations of 29 U.S.C. § 206 and 29 U.S.C. § 215(a)(3) [the "Equal Pay Act"]**
**(Retaliation)**

36. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

37. Plaintiff was terminated in retaliation for complaining that females were not properly paid an equal rate for equal work as compared to their male counterpart(s) in the same workplace.

38. These actions as foresaid constitute violations of 29 U.S.C. § 206 and 29 U.S.C. § 215(a)(3).

### Count III
### Violations of Title VII
### (Race Retaliation)

39. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40. Plaintiff uncovered pay disparities within Defendant's workforce based upon race, such that she was forced to escalate her concerns to Defendant's management in advance of her termination.

41. Upon information and belief, Defendant's management did not properly investigate or resolve Plaintiff's concerns of race discrimination and the unlawful treatment continued.

42. Shortly after complaining to Defendant's management of race discrimination, she was denied a promotion and terminated from her employment for completely pretextual reasons.

43. Plaintiff also believes and therefore avers that Defendant denied Plaintiff her promotion and terminated her employment in retaliation for complaining of race discrimination.

44. These actions as aforesaid constitute unlawful retaliation, under Title VII.

**Count IV**
**Violations of 42 U.S.C. Section 1981 ("Section 1981")**
(Race Retaliation)

45. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

46. Plaintiff repeats, reasserts and realleges each and every allegation of Count III of this Complaint, *supra*, as they constitute identical violations of Section 1981

47. These actions as aforesaid constitute violations of Section 1981.

**Count V**
**Violation of New York State Human Rights Law**
(Gender Discrimination and Gender/Race Retaliation)

48. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

49. Plaintiff re-asserts and re-alleges each and every allegation as set forth in Counts, I, II, III and IV of this Complaint, *supra,* as such actions constitute identical violations of the NYSHRL.

50. These actions as aforesaid constitute violations of the NYSHRL.

**Count VI**
**New York City Human Rights Law, N.Y.C. Admin. Code ("NYCHRL")**
(Gender Discrimination and Gender/Race Retaliation)

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. Plaintiff re-asserts and re-alleges each and every allegation as set forth in Counts I, II, III and IV of this Complaint, *supra,* as such actions constitute identical violations of the NYCHRL.

53. These actions as aforesaid constitute violations of the NYCHRL.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and is to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/interference at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law, in an amount determined by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate, including but not limited to, emotional distress and/or pain and suffering damages (where legally permitted);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law; and

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

    Respectfully submitted,

    **KARPF, KARPF & CERUTTI, P.C.**

    */s/ Adam C. Lease*
    Adam C. Lease, Esquire
    3331 Street Road
    Two Greenwood Square, Suite 128
    Bensalem, PA 19020
    (215) 639-0801
    *Attorneys for Plaintiff*

Dated: August 5, 2022